UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22683-Civ-COOKE
MAGISTRATE JUDGE P.A. WHITE

DREW C. HARTLEY,                  :

    Petitioner,               :

v.                                :     REPORT OF
                                        MAGISTRATE JUDGE
WALTER A. McNEIL,[1]              :

    Respondent.               :
_____

Drew C. Hartley, a state prisoner currently confined at Martin Correctional Institution at Indiantown, Florida, has filed an amended pro se petition for writ of habeas corpus, challenging the execution or administration of his sentences. He alleges that his constitutional rights were violated in connection with disciplinary action taken by prison officials with regard to a disciplinary report issued on May 12, 2005.[2] Hartley seeks relief in the form of the setting aside of the disciplinary report and its removal from his institutional record. He also requests this Court to restore

---

[1] The pro se Petitioner in this habeas corpus proceeding names as respondent Randall Bryant, the Warden of Florida State Prison, his place of confinement at the time he instituted the instant proceeding. Hartley has been transferred to Martin CI, and he now requests this Court to change the designation of respondent to the Warden of Martin CI. (DE# 25). Because Hartley is incarcerated in the Florida Department of Corrections, Walter A. McNeil, Secretary of the Florida Department of Corrections, is the proper respondent. By separate order entered this date, the designation of respondent has been changed to the Walter A. McNeil. The Attorney General of the State of Florida has filed a response on behalf of the initially named respondent.

[2] Specifically, Hartley raises the following claims in his amended petition: (1) the subject charging disciplinary report did not sufficiently notify him of the time of the alleged incident in violation of the rules of the Florida Department of Corrections;(2) he was denied an adequate and impartial investigation into the charge of disrespect to official; (3) he was denied an impartial hearing body in violation of his constitutional due process rights; and (4) he was denied his right to appeal the results of the disciplinary proceeding in that an exculpatory videotape recording had intentionally been destroyed by prison officials.

the loss of all potentially earned gaintime.[3]

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the amended petition with supporting exhibits, the Court has the respondent's response to an order to show cause with multiple exhibits, and the petitioner's replies with supporting exhibits.

The factual and procedural background of this case is as follows.[4] Records maintained by the Florida Department of Corrections indicate that Hartley was convicted of various offenses in Pinellas County Circuit Court, and he was sentenced on August 25, 2003, to multiple terms of imprisonment, including two five-year terms and two ten-year terms.[5] See http://www.dc.state.fl.us. Hartley is not due to be released from confinement until March 18, 2017. Id. While confined at Everglades Correctional Institution,

---

[3]This is Hartley's second habeas corpus petition filed in this Court. In his earlier case, Case No. 07-21731-Civ-Unargo, Hartley challenged a disciplinary report issued on April 11, 2005. The undersigned entered a report, recommending that the petition be dismissed with prejudice, and the Honorable Ursula Ungaro, United States District Judge, agreed with the recommendation and dismissed the petition with prejudice by order entered on May 7, 2008.

[4]The procedural history of this case has been gleaned from the pleadings and extensive exhibits filed by the petitioner, which include all pertinent records with regard to the subject disciplinary proceeding. (DE# 10, 12, 27). It is noted that Hartley has also included documents that refer to unrelated disciplinary reports issued on May 23 and June 1, 2005. He does not challenge those proceedings in the instant petition.

[5]Specifically, Hartley is currently confined pursuant to the following convictions: two counts of possession of cocaine, attempted sexual battery, and false imprisonment. See http://www.dc.state.fl.us. Besides, the current convictions, Hartley was earlier convicted in Pinellas County Circuit Court of at least eleven other offenses. Id.

Hartley received a disciplinary report issued on May 12, 2005, charging him with disrespect to officials, Fla.Admin.Code Rule 33-601.314, Section 1-4.[6] See Disciplinary Report issued on May 12, 2005. (DE# 10-1 at 29). The charging officer, Officer A. Edmond, set forth the facts as follow:

> ON MAY 12, 2005 AT APPROXIMATELY 6:30 M. (sic) I, OFFICER A. EDMOND WAS ASSIGNED AS FOXTROT DORMITORY SUPERVISOR. WHILE INSIDE QUAD THREE, I GAVE INMATE HARTLEY, DREW DC# 268221, WHO'S (sic) ASSIGNED HOUSING UNIT IS F3-205L ALONG WITH INMATE HUGGINS ROBERT DC# 677540 (F3-205U), A VERBAL ORDER NOT TO THROW ARTICLES OUT OF THE FLAP. INMATE HARTLEY STATED "FUCK YOU!" AND THREW TWO MILK CARTONS OUT OF THE FLAP. THE SHIFT OIC WAS NOTIFIED AND AUTHORIZED THE WRITING OF THIS REPORT. INMATE HARTLEY WILL REMAIN IN HIS CURRENT STATUS PENDING THE CHARGE 1-4 DISRESPECT TO OFFICIALS.

Id. at 1. Hartley was notified in writing of the charge on May 17, 2005, and he was advised of all his rights in connection with the disciplinary proceedings. Id. at 1-2.

On May 19, 2005, Hartley appeared before the disciplinary hearing team. See Disciplinary Hearing Worksheet. (DE# 10-2 at 44). Id. At the hearing, Hartley declined the offer of staff assistance. Id. After the charge was read and the procedures and penalties explained, Hartley entered a plea of not guilty. Id. The statement of the charging officer was read and considered at the hearing, after which Hartley was found guilty by the disciplinary team of the charged violation for the following reasons:

> DR Hearing post poned (sic) for further investigation.[7]

---

[6]Section 1-1 of Fla.Adm.Code 33-601.314 makes "disrespect to officials" punishable by up to 30 days in disciplinary confinement plus loss of up to 60 days gaintime.

[7]Apparently, the hearing had earlier been scheduled but was continued based upon Hartley's request for further investigation in that he sought the production of an alleged videotape recording of the subject incident. See Disciplinary

> [Inmate Hartley] asked for video tape. Tape was reviewed and did not feature audio to confirm or deny disrespect. I/M Hartley, Drew DC#268221 plead (sic) not guilt[y] and the team finds him guilty based on the investigation and the statement of facts in section one which states Officer Edmond heard and observed I/M Hartley state to him "Fuck you."

<u>Id</u>. As a result of the finding of guilt, Hartley received disciplinary confinement for a period not to exceed 30 days with no loss of gaintime. <u>Id</u>.

Hartley then pursued his administrative and state court remedies, essentially appealing the disciplinary team's decision on the grounds presented in this federal petition. Hartley submitted administrative appeals at the institutional level, and his various grievances were rejected as untimely. (DE# 10-2 at 35-9, 45-50; DE#10-3 at 1-5). Hartley also pursued relief in the Florida state courts. Before his administrative remedies had been exhausted, Hartley pursued <u>pro</u> <u>se</u> mandamus proceedings in the trial court, seeking the preservation of various types of evidence, including the confinement videotape recording allegedly capturing the subject incident. (DE# 10-1 at 31-41). The trial court entered an order, requiring the state to file a response to the petition for writ of mandamus and further ordering the subject videotape recording to be preserved and not destroyed pending final resolution of the proceeding. <u>Id</u>. at 10-1. The state filed a thorough response with attached exhibits, arguing that Hartley was not entitled to the extraordinary relief he sought in that he had failed to exhaust his administrative remedies. <u>See</u> Respondent's Response to Order to Show Cause and Motion to Dismiss Petitioner's Petition for Writ of Mandamus. (DE# 12-2 at 19-29). Attached to the response was an affidavit from Assistant Warden Ted Jeter stating that in accordance with prison procedure, the subject videotape recording

---

Hearing Worksheet. (DE# 10-2 at 44).

4

had been retained for a period of thirty days and then was recorded over. (Affidavit of Ted A. Jeter executed on August 11, 2005)(DE# 12-2 at 29). The petition for writ of mandamus was then denied. See Order Denying Defendant's Petition for Writ of Mandamus entered September 1, 2005. (DE# 12-2 at 30).

Hartley also filed in the trial court a pro se petition for issuance of extraordinary writ with supporting exhibits. (DE# 10-3 at 51-60). The trial court dismissed the petition for lack of exhaustion of administrative remedies, and Hartley's motion for rehearing was denied. See Order Dismissing Petition for Writ of Habeas Corpus by order entered on December 16, 2005; Motion for Relief from Order; Order Denying Motion entered on March 27, 2006. (DE# 10-3 at 51, 63-5; DE# 10-4 at 1). Hartley took an appeal from the trial court orders. (DE# 10-4; DE# 10-5; DE# 10-6). The state filed a brief, arguing that the trial court had properly dismissed the petition for lack of exhaustion and that Hartley had in no way been denied access to the courts by prison officials and/or the trial court for the reasons alleged by Hartley (i.e., denial of copy services, improper return of legal papers by trial court, documents or evidence missing from record, etc.). See Limited Answer Brief of Appellee. (DE# 10-5 at 1-14). The Florida First District Court of Appeal affirmed the trial court rulings in a per curiam decision without written opinion. See Hartley v. Department of Corrections, 962 So.2d 906 (Fla. 1 DCA 2007)(table).

Not long after all state court proceedings had concluded, Hartley came to this Court instituting the instant petition for writ of habeas corpus, challenging the subject disciplinary proceedings as violative of his due process rights. Although Petitioner filed his amended petition pursuant to 28 U.S.C. §2241, his petition is governed by both §2241 and §2254. See Medberry v.

5

Crosby, 351 F.3d 1049, 1063 (11 Cir. 2003)(holding that §2241 and §2254 apply to petitions for habeas corpus filed as §2241 petitions where the petitioner is "in custody pursuant to the judgment of a state court."), cert. denied, 541 U.S. 1032 (2004). The respondent has filed a response to an order to show cause, in which he concedes that the petitioner has sufficiently exhausted all his administrative and judicial remedies. 28 U.S.C. §2254(b),(c).[8] The respondent asserts, however, that Hartley is not entitled to review on the merits of his claims in that his attack on the subject disciplinary proceeding is not cognizable in this federal habeas corpus proceeding. Specifically, the respondent maintains that Hartley never lost gaintime as a result of the proceeding, therefore, his length of confinement was not impacted by the proceeding. Consequently, this case does not present a sufficient liberty interest to invoke due process protections. The respondent also argues, in the alternative, that Hartley is not entitled to review on the merits of his claims, because his claims were

---

[8]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). In Florida, if a prisoner challenges a disciplinary sanction imposed by the Department of Corrections, a state petition for habeas corpus or mandamus relief to the appropriate trial court is filed and, if unsuccessful, the prisoner seeks relief by filing a petition for certiorari review to the appropriate state appellate court. See Havlicek v. State, 804 So.2d 601 Fla. 5 DCA 2002)(prisoner filed petition for writ of habeas corpus asserting that Department of Corrections was without legal authority to forfeit gain time as a disciplinary punishment for his escape, and to forfeit gain time following his conviction for same escape); White v. Moore, 789 So.2d 1118 (Fla. 1 DCA 2001)(holding that Florida District Court of Appeal reviews by certiorari an order of the circuit court acting in its appellate capacity denying an inmate's petition for writ of mandamus, challenging a disciplinary sanction imposed by the Florida Department of Corrections); Jones v. Florida Department of Corrections, 615 So.2d 798 (Fla. 1 DCA 1993)(holding that appropriate remedy to seek review of order denying administrative appeal of a disciplinary report against prisoner is by petition for extraordinary relief in circuit court, and if petition is denied, prisoner may then seek review of the final order of the circuit court).

expressly procedurally barred in the administrative proceeding on the basis of untimeliness, which decisions were affirmed by the state courts. He also argues that even if reviewed on the merits, Hartley is not entitled to federal habeas corpus relief, because he has not demonstrated pursuant to applicable law that he is entitled to the relief he seeks.

An inmate can only claim a due process violation if the liberty interest he has lost is one of real substance. Sandin v. Conner, 515 U.S. 472, 478 (1995). Liberty interests grounded in the due process clause can only be created under certain limited circumstances. Since Sandin, only two instances exist where a prisoner can claim a protected liberty interest under the due process clause. Id. at 484. The first is when the prison's actions have the effect of altering his term of imprisonment, since any action that lengthens an inmate's sentence raises due process concerns. The second is where the prison's restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. The loss of gaintime falls into the first category. Regarding an inmate charged with an offense that would deprive him of good conduct time credit, it is well settled that he is entitled to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that his rights are not arbitrarily abrogated. Wolff v. McDonnell, 418 U.S. 539, 558 (1974).

The record in this case, as reviewed above, indicates that this case is not about the loss of gaintime credits previously earned as a result of the disciplinary proceedings. See Disciplinary Hearing Worksheet. Hartley's punishment consisted solely of disciplinary confinement not to exceed thirty days. Id. Since Hartley raises only procedural claims concerning the

disciplinary decision, and since he did not lose any gaintime as a result of the disciplinary charging report, this case does not present a sufficient liberty interest to invoke the due process protections of *Wolff*, as correctly argued by the respondent. See Sandin, 515 U.S. at 486 (holding that thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection); Hewitt v. Helms, 459 U.S. 460, 466 (1983)(holding that an inmate has no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement). See also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11 Cir. 1998)(finding that placement in administrative confinement for two months did not constitute deprivation of a constitutionally protected liberty interest as defined in *Sandin*). No protected liberty interest was abrogated here and Hartley is not entitled to habeas relief.

While Hartley appears to acknowledge that he did not lose any gaintime as a result of the subject proceeding, he seeks the restoration of the loss of "potentially earned gaintime." Hartley states in his various pleadings that based upon the subject disciplinary proceeding when taken singly and/or in conjunction with his various other disciplinary proceedings, he has lost the right to earn future gaintime awards although he has since received satisfactory and above satisfactory evaluations. See e.g., Motion for Discovery and Expansion of the Record; Newly Obtained Evidence in Support of Discovery and Expansion of the Record with supporting Appendix. (DE# 22, 26, 27). He, therefore, maintains that he continues to be subjected to present and future adverse consequences based upon his disciplinary record. Hartley is apparently contending that the *mere opportunity* or *expectation* to earn good-time credits constitutes a constitutionally cognizable

8

liberty interest sufficient to trigger the protections of the Due Process Clause. Hartley is mistaken. The possibility of the loss of future gaintime does not entitle Hartley to review on the merits of his claims.

Florida law provides the following, with respect to incentive gain time:

> (1) The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.
>
> (2)(a) The department shall establish for each prisoner sentenced to a term of years a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.
>
> \*          \*          \*
>
> (3)(a) The department shall also establish for each prisoner sentenced to a term of years a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section. The initial tentative release date shall be determined by deducting basic gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.
>
> \*          \*          \*
>
> (4)(b) For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph. The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the inmate was sentenced.

> \* \* \*
>
> 3. For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed. For purposes of this subparagraph, credits awarded by the court for time physically incarcerated shall be credited toward satisfaction of 85 percent of the sentence imposed. Except as provided by this section, a prisoner shall not accumulate further gain-time awards at any point when the tentative release date is the same as that date at which the prisoner will have served 85 percent of the sentence imposed. State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.
>
> \* \* \*
>
> (7) The department shall adopt rules to implement the granting, forfeiture, restoration, and deletion of gain-time.

Fla. Stat. §944.275 (West 2005).

The Florida Department of Corrections has adopted provisions of the Florida Administrate Code to provide procedures concerning the award of incentive gaintime. Rule 33-601.101(3), Fla.Admin.Code sets forth detailed methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components." Various factors for consideration are listed, which include hygiene, appearance of clothing, adherence to rules and respect for others, maintenance of living quarters, work performance, and program performance. Id. More particularly to this case, subsections (5) and (6) relate to disqualification of incentive gaintime and provide as follow:

> (5) Disqualifications. The following conditions will disqualify an inmate for an award of incentive gain time for the period stated.
>
> \* \* \*

>    (6) Inmates in disciplinary confinement status are not eligible for a work/program rating even if assigned to work or programs while in disciplinary confinement. Inmates in disciplinary confinement are eligible for a security rating award which can be modified by the correctional probation officer in accordance with paragraph 33-601.101(3)(b), F.A.C.
>
>    (a) Disciplinary or court action. An inmate is not eligible to receive incentive gain time for the month in which there is an infraction of the rules of the Department or the laws of the State for which he is found guilty .... Any inmate who is found guilty of a disciplinary report on or after April 21, 1996 and who is serving a sentence imposed for an offense committed on or after October 1, 1995 shall be eligible to earn incentive gain time as follows:
>
>                    *          *          *
>
>    2. For disciplinary reports in which the final approved action is less than or equal to 30 days confinement or less than or equal to 30 days loss of gain time, the inmate shall not be eligible to earn incentive gain time for three months following the month in which the disciplinary infraction occurred. The three month period of ineligibility shall not begin to run until the inmate is in the department's custody and would be otherwise eligible to earn gain time but for the disciplinary action or new offense.
>
>    3. For disciplinary reports in which the final approved action is greater than 30 days confinement or greater than 30 days loss of gain time, or where the inmate was convicted of an offense occurring while committed to the Department of Corrections, the inmate shall not be eligible to earn incentive gain time for six months following the month in which the disciplinary infraction or offense occurred. The six month period of ineligibility shall not begin to run until the inmate is in the department's custody and would be otherwise eligible to earn gain time but for the disciplinary action or new offense.

Fla.Admin.Code Rule 33-601.101(5),(6). See also Fla.Stat. §944.275 (West 2005).

Based upon the above-reviewed Florida law, Hartley was not eligible to earn incentive gaintime for May, 2005, the month of the

disciplinary infraction, as well as for the three months following May, 2005, if not for a longer period, if Hartley's assertion that the subject sanction was imposed to run consecutively to the 60-day confinement sanction imposed as a result of the disciplinary report issued on April 11, 2005. Although as a result of the subject disciplinary proceedings, Hartley has been rendered ineligible to receive gaintime awards for the applicable time period, he cannot show that he lost credits that were actually earned. Moreover, prison officials are not required under Florida to grant Hartley incentive gaintime even in the absence of the subject disciplinary decision. Whether Hartley would have actually been awarded incentive gaintime in any given month depended upon a number of factors tied to his future behavior, and the amount of the award, if any, was entirely within the discretion of corrections officials who were making these evaluations. Accordingly, based upon *Sandin*, the opportunity to earn incentive gaintime provided by Florida law is not a sufficient liberty interest to invoke the protections of the Due Process Clause. The potential loss of future gaintime based upon the subject disciplinary proceeding is too speculative to give rise to a liberty interest protected by due process. Venegas v. Henman, 126 F.3d 760, 765 (5 Cir. 1997)("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest"), cert. denied, 523 U.S. 1108 (1998); Luken v. Scott, 71 F.3d 192, 193 (5 Cir. 1995)(holding that *opportunity* to earn good-time credits, which *might* lead to earlier release does not constitute a constitutionally protected liberty interest), cert. denied, 517 U.S. 1196 (1996). See also Conlogue v. Shinbaum, 949 F.2d 378, 380 (11 Cir. 1991)(concluding no liberty interest arose from possibility of discretionary grant of incentive good time), cert. denied, 506 U.S. 841 (1992); Hartley v. McNeil, 2008 WL 1844416 (N.D.Fla. 2008).  Hartley, therefore, cannot

establish that the disciplinary decision resulted in a violation of his constitutional rights.

As pointed out by the undersigned in the Report entered in Hartley's earlier habeas corpus proceeding, the record reveals that Hartley is far from a model prisoner.[9] See Report of Magistrate Judge entered on March 27, 2008; DE# 31; Case No. 07-21731-Civ-Ungaro. Since his return to confinement on September 4, 2003, he has shown poor institutional adjustment and is no stranger to disciplinary proceedings in that he has continually violated institutional rules. For example, from September 4, 2003, through October 27, 2005, Hartley received eleven disciplinary reports. See Florida Department of Corrections Report of Close Management dated October 27, 2005. (Appendix to Amended Petition at 131-32)(DE# 12; Case No. 07-21731-Civ-Ungaro). From January 1, 2005, through October 27, 2005, he had received eight of those reports and was charged with the following: fighting, refusing to work, disrespect, lying to staff, possession of contraband, disobeying orders, and possession of a weapon. Id. The most serious offense, possession of a weapon, involved an approximately eight-inch long object, made of heavy gauge metal and had a belt wrapped around one end for a handle. Id. The latter charge resulted in placement in close management confinement. Id.

Due to his continued inability to follow prison rules and regulations, on July 27, 2005, Hartley was received at Washington CI on a management problem transfer from Everglades CI. See Florida Department of Corrections Report of Close Management dated October 27, 2005, at 1. Id. at 131-32. Further, while confined at Everglades CI, Hartley received an unsatisfactory security

---

[9]This Court will take judicial notice of its own records in Hartley's previous habeas corpus case, Case No. 07-21731-Civ-Ungaro.

evaluation based upon his general compound behavior and no gaintime award was recommended. See Inmate Notice regarding gaintime awards dated May 13, 2005. Id. at 121. Although he has more-recently received above satisfactory and satisfactory evaluations, while confined at Martin CI, he has also received an unsatisfactory security evaluation for the month of January 2008, and an unsatisfactory assignment evaluation for the month of February 2008. See Inmate Notices dated January 14, February 12, March 12, and April 11, 2008. (DE# 27). Due to his continued inability to follow prison rules and regulations, as recently as January 10, 2008, Hartley received a disciplinary report for failure to comply. (Response to Grievance dated March 9, 2008)(DE# 27). Hartley is currently housed in close management confinement at Martin CI. See http://www.dc.state.fl.us. While Hartley might be precluded at times from receiving various types of gaintime that he might otherwise have been entitled to, any such result is not solely due to the disciplinary proceeding challenged here. Rather, it is clearly based upon Hartley's long history of disciplinary problems. Although Hartley is apparently displeased with the possibility of not receiving in the future various gaintime awards, Hartley has no one to blame but himself. Based upon his poor institutional record, it is no surprise that he fails to receive various gaintime awards.

Hartley's contention that he is entitled to an evidentiary hearing in this Court on the claims presented in this federal petition is meritless. Section 28 U.S.C. §2254(e)(2) provides that a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts would "establish by clear and convincing evidence" the petitioner's

14

actual innocence. See Williams v. Taylor, 529 U.S. 420, 433-37 (2000). Hartley has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

Since Petitioner has failed to make a substantial showing of the denial of a federal right; see 28 U.S.C. §2241(c)(3), it is therefore recommended that his petition for writ of habeas corpus be dismissed with prejudice.[10]

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 29th day of May, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Drew C. Hartley, Pro Se
      DC# 268221
      Martin Correctional Institution
      1150 SW Allapattah Road
      Indiantown, FL 34956-5397

      David J. Glantz, AAG
      Department of Legal Affairs
      The 110 Tower, 10th Floor
      110 S.E. 6th Street
      Fort Lauderdale, FL 33301

---

[10] It is noted that for the alternate reasons expressed by the respondent in his Response, Hartley would not be entitled to federal habeas corpus relief in that the state courts applied an express procedural bar as to the claims and/or his claims are meritless. See Response at 8-11. (DE# 15).

15